In the United States District Court
for the Southern District of New York

| | |
|---|---|
| Nathaniel Pritchette,<br><br>On behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Golden Child Holdings, LLC, GC Pizza Hut, LLC, GC Pizza Hut New York, LLC, GC Pizza Hut Reo New Hartford, LLC, GC Pizza Hut Reo Owego, LLC, Jonathan Childs, Thomas Mulkey, Thomas Stager, Myles Gillespie, John Doe Corporations 1-10, John Does 1-10;<br><br>        Defendants. | Case No.<br><br>Judge<br><br><br>Jury Trial Demanded |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Plaintiff Nathaniel Pritchette ("Plaintiff" or "Pritchette") brings this action against Defendants Golden Child Holdings, LLC, GC Pizza Hut, LLC, GC Pizza Hut New York, LLC, GC Pizza Hut Reo New Hartford, LLC, GC Pizza Hut Reo Owego, LLC, Jonathan Childs, Thomas Mulkey, Thomas Stager, Myles Gillespie, John Doe Corporations 1-10, and John Does 1-10 (collectively "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and Title 26 ("Labor Industry") of Maine Revised Statutes ("MRS").  Based upon personal knowledge and investigation by counsel, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

2.     Defendants own and operate more than 100 Pizza Hut pizza franchises ("GC Pizza Hut" stores) in eight states including Maine and New York.

3.     As part of their ownership and operation of the GC Pizza Hut stores, Defendants employ delivery drivers who use their own automobiles to deliver pizza and other food items to their customers.  However, instead of reimbursing delivery drivers for their actual or reasonably approximate costs of the business use of their vehicles, Defendants have violated the Fair Labor Standards Act and Maine's wage and hour laws (Title 26, Chapter 7) by using a flawed method to determine reimbursement rates that provide such an unreasonably low rate beneath the actual or any reasonable approximation of the expenses the delivery drivers incur that the drivers' unreimbursed expenses cause their wages to fall below the legally-mandated minimum wage for all hours worked.

4.     Accordingly, Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. to recover unpaid minimum wages owed to Plaintiff and similarly situated delivery drivers employed by Defendants at the GC Pizza Hut stores and/or to remedy violations of the FLSA wage and hour provisions by Defendants at their GC Pizza Hut stores.

5.     Plaintiffs also bring this action on behalf of himself and similarly situated current and former delivery drivers in Maine, pursuant to Federal Rule of Civil Procedure 23, to recover unpaid minimum wages owed to Plaintiff and similarly situated delivery drivers employed by Defendants at the GC Pizza Hut stores and/or to remedy violations of the Maine wage and hour law (Maine Revised Statutes, Title 26, Chapter 7, et seq.) by Defendants at their GC Pizza Hut stores.

## JURISDICTION AND VENUE

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Maine law claims, including Title 26, Chapter 7, Subchapter 3 §§ 661, 621-a, 629.

8.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants own and operate GC Pizza Hut stores in this district and because corporate defendants Golden Child Holdings LLC, GC Pizza Hut LLC, GC Pizza Hut New York, LLC, GC Pizza Hut Reo New Hartford, LLC, and GC Pizza Hut Reo Owego, LLC maintain their headquarters in this federal district.

## PARTIES

## PLAINTIFF

9.     Plaintiff, Nathaniel Pritchette ("Plaintiff") resides and has resided in the state of Maine at all times relevant. Plaintiff worked for Defendants at a GC Pizza Hut store in Bangor, Maine from September 2020 to October 2021, during which time, Plaintiff, among other duties, used his own automobile to deliver pizza and other food items to customers.

10.     During that time, Plaintiff was an "employee" of Defendants as defined in the FLSA and Maine wage law, including Maine Revised Statutes, Title 26, Chapter 7 §§ 663.

11.     Plaintiff has given written consent to join this action.

## DEFENDANTS

12.     Defendant Golden Child Holdings, LLC ("GCHLLC") is a New York corporation headquartered at 116 Radio Circle Drive, Ste 305, Mount Kisco, New York.  GCHLLC is an

investment firm, which touts its investment strategy as one that: "targets established investments that experience a dislocation in asset pricing and asset value."[1]

13.     Defendant GC Pizza Hut, LLC ("GCPHLLC") is a New York corporation headquartered at 116 Radio Circle Drive, Ste 200, Mount Kisco, New York.  GCPHLLC, which is part of GCHLLC is: "one of the largest owners/operators of Pizza Hut franchises in the US."[2] It owns and operates more than 100 GC Pizza hut stores in eight states.[3]

14.     Defendant GC Pizza Hut New York, LLC is a New York corporation headquartered at 116 Radio Circle Drive, Ste 200, Mount Kisco, New York.

15.     Defendant GC Pizza Hut Reo New Hartford, LLC is a New York corporation headquartered at 116 Radio Circle Drive, Ste 200, Mount Kisco, New York.

16.     Defendant Jonathan Childs is the Founder and Managing Partner of GCHLLC.  In that role, he is "actively involved in [GCHLLC's] investment in the Pizza Hut business."[4]  Childs is a domiciliary of New York and this federal district.

17.     Defendant Thomas Mulkey is the Senior Managing Director and Partner of GCHLLC.

18.     Defendant Thomas Stager is an Operating Partner of GCHLLC. He is, " . . . responsible for GC 's investment in Pizza Hut, which currently includes more than one hundred (100) locations, spanning (8) eight states."[5]

---

[1] http://goldenchildholdings.com/about/ (last visited January 24, 2022).
[2] https://www.linkedin.com/company/gc-pizza-hut/about/ (last visited January 24, 2022)
[3] On GCPHLLC's LinkedIn page. https://www.linkedin.com/company/gc-pizza-hut/about/ (last visited on January 25 2022), GCPHLLC reports that it operates 97 stores in seven states.  However, as referred to in paragraph 18, GCHLLC reports that Defendants own and operate more than 100 GC Pizza Hut stores in eight states.
[4] http://goldenchildholdings.com/about/#leadership (last visited on January 24, 2022).
[5] http://goldenchildholdings.com/about/#leadership (last visited on January 24, 2022).

19.     Defendant Miles Gillespie is a Principal of GCHLLC. He serves as Analyst and Director of Finance for GC Pizza Hut.[6] He is a domiciliary of New York and this district.

20.     During the time Plaintiff worked at a GC Pizza Hut store in Bangor, Maine, Defendants were "employers" of Plaintiff and similarly situated employees as that term is defined under the FLSA and as it is interpreted under Maine's wage and hour law (Title 26, Chapter 7 of Maine Revised Statutes). Even after Plaintiff left his employ at the GC Pizza Hut store in Bangor, Maine, Defendants continued (and continue to this day) as "employers" of GC Pizza Hut store employees as that term "employers" is defined under the FLSA and as it is interpreted under Maine's wage and hour law (Title 26, Chapter 7 of Maine Revised Statutes).

21.     As owners and operators of these more than 100 GC Pizza Hut stores, Defendants maintain control, oversight, and direction over the terms and conditions of employment of Plaintiff and similarly situated employees and over the working conditions of Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices, including the unlawful policies and practices alleged herein.

22.     Defendants' collective and/or annual gross volume of sales made or business done is not less than $500,000.

## CLASSWIDE FACTUAL ALLEGATIONS

23.     Defendants own and operate more than 100 GC Pizza Hut stores in eight states.

24.     At their GC Pizza Hut stores, Defendants employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

_____

[6] https://www.linkedin.com/in/myles-gillespie-7a106053/ (last visited on January 24, 2020).

25.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the GC Pizza Hut stores building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

26.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use when delivering Defendants' pizza and other food items.

27.     When delivering pizza and other food items for Defendants' benefit, Defendants' delivery drivers incur job-related expenses including, but not limited to: gasoline, vehicle parts and fluids, repair and maintenance services, insurance, licensing, registration, financing costs, and depreciation.

28.     Pursuant to Defendants' delivery driver reimbursement policy, delivery drivers were reimbursed on a per-mile reimbursement rate for each mile they drove making deliveries for Defendants.  However, that reimbursement rate was not based on the delivery drivers' actual expenses, and it was less than the IRS standard business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle.  Indeed, upon information and belief, Defendants have not even maintained records of the actual expenses incurred by their delivery drivers.

29.     The result of Defendant's delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of their drivers' automobile expenses.

30.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.   2016: 54 cents/mile
   b.   2017: 53.5 cents/mile
   c.   2018: 54.5 cents/mile
   d.   2019: 58 cents/mile
   e.   2020: 57.5 cents/mile
   f.   2021: 56 cents/mile

g.   2022:  58.5 cents/mile.[7]

31.     However, upon information and belief, the driving conditions associated with the pizza delivery business cause even more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver, which includes, among other things: frequent starting and stopping of the engine, frequent braking, and short routes as opposed to highway driving.

32.     Defendants' delivery driver reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle.  Thus, Defendants uniformly failed to reimburse their delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

33.     Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants.

34.     In addition, and as a result of Defendants' failure to pay their delivery drivers their actual expenses or to pay a reimbursement rate that reasonably approximates the delivery drivers' automobile expenses, the delivery drivers' net wages were (and are) diminished beneath the federal and Maine minimum wage requirements.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

---

[7] Of note, for drivers who drive 15,000 miles per year, the American Automobile Association ("AAA") determines the average vehicle costs per mile at $0.64 per mile for 2021 (https://newsroom.aaa.com/wp-content/uploads/2021/08/2021-YDC-Brochure-Live.pdf) (last visited January 26, 2022); $0.6374 per mile for 2020. https://northeast.aaa.com/content/dam/aaa-ne-web/pdf/travel/2020-Your-Driving-Costs-Brochure.pdf (last visited January 26, 2022); and $0.6188 per mile for 2019 (https://exchange.aaa.com/wp-content/uploads/2019/09/AAA-Your-Driving-Costs-2019.pdf) (last visited January 26, 2022).

35.     Defendants harmed Plaintiff in a manner consistent with their policies, patterns, and practices as described herein.

36.     Plaintiff worked at Defendants' GC Pizza Hut store in Bangor, Maine, beginning in or about September 2020 to October 2021.

37.     Throughout the duration of his employment for Defendants at the GC Pizza Hut store in Bangor, Maine, Plaintiff, under both the FLSA and the Maine wage and hour law (MRS Title 26, Chapter 7) was an hourly, non-exempt employee of Defendants.

38.     Plaintiff worked as a delivery driver for Defendants.

39.     In his role as a delivery driver, Plaintiff delivered pizza and other food items to the homes and businesses of Defendants' customers.

40.     When he was not making deliveries, Plaintiff worked inside the GC Pizza Hut restaurant in Bangor, Maine, completing tasks such as taking orders, making pizza, building pizza boxes, taking out trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

41.     For the hours he worked for Defendants inside the GC Pizza Hut restaurant in Bangor, Maine, Plaintiff was paid approximately Maine minimum wage. In Maine, the minimum wage was $12.00 in 2020 and $12.15 in 2021.

42.     However, when he was working as a delivery driver for Defendants, making deliveries, Plaintiff was paid a tipped-wage of $7.75 per hour.

43.     In his work as a delivery driver for Defendants, delivering pizza and other food items for Defendants' benefit, Plaintiff was required by Defendants to maintain and pay for an operable, safe, and legally compliant automobile to use when making deliveries.

44.     In his work as a delivery driver for Defendants, delivering pizza and other food items for Defendants' benefit, Plaintiff was required by Defendants to incur—and he did incur—job-related expenses including, but not limited to: gasoline, vehicle parts and fluids, repair and maintenance services, insurance, licensing, registration, financing costs, and depreciation.

45.     Defendants, however, did not record all of Plaintiff's expenses he incurred while completing deliveries for them.

46.     Defendants did not reimburse Plaintiff at the IRS standard business mileage rate for each mile he drove.

47.     Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

48.     Rather, Plaintiff was reimbursed thirty-five cents ($0.35) per mile he drove while completing deliveries for Defendants.

49.     The system that Defendants' use to track these miles routinely undercounted his actual miles driven.

50.     In 2020, for example, when the IRS standard business mileage rate was $0.575 cents per mile, Plaintiff was under-reimbursed by $.225 per mile.

51.     During his employment as a delivery driver by Defendants, Plaintiff made between 2 and 3 deliveries per hour he worked on the road making deliveries.

52.     Plaintiff estimates that each delivery he completed consisted of a round-trip drive of approximately 8 miles on average.

53.     As such, in 2021, Plaintiff's wages were reduced by approximately $4.50 per hour (2.5 deliveries × 8 miles per delivery × $.225 per mile under-reimbursement).

54. As a result of these unreimbursed automobile expenses Defendants have failed to pay Pritchette minimum wage as required by law.

55. Defendants also made Pritchette drive to various other locations to carry-out non-food-delivery tasks such as pick up laundry, make bank deposits, and drop off promotional materials, among other things. All such mileage was completely un-reimbursed.

56. All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

57. Because Defendants paid their drivers a gross hourly wage below the federal minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

58. While the amount of Defendants' actual reimbursements per delivery may vary over time, Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of their other GC Pizza Hut stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

59. The net effect of Defendants' flawed reimbursement policy is that Defendants have willfully failed to pay the federal minimum wage to their delivery drivers. Defendants thereby enjoy ill-gained profits at the expense of its employees.

## COLLECTIVE ACTION ALLEGATIONS

60.     Pursuant to 29 U.S.C. §216(b), Plaintiff brings this FLSA claim as an "opt-in" collective action on behalf of himself and all similarly situated current and former delivery drivers employed at the GC Pizza Hut stores owned, operated, and controlled by any of the named Defendants nationwide during the three years prior to the filing of the original complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

61.     Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendants' willful and unlawful policy and practice of failing to pay employees' federal minimum wage.

62.     The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential collective action members may be notified of the pendency of this action via mail and electronic means.

63.     Plaintiff and all of Defendants' delivery drivers are similarly situated. They have had substantially similar job duties, requirements, and pay provisions, and all have been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and all of their delivery drivers minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.

64.     More specifically, Plaintiff and all of Defendants' delivery drivers are similarly situated in that:

a.  They have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;
b.  They have delivered pizza and food items using automobiles not owned or maintained by Defendants;
c.  Defendants required them to maintain these automobiles in a safe, legally operable, and insured condition;
d.  They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;

e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. They were subject to the same pay policies and practices of Defendants;

g. They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h. They were reimbursed similar set amounts of automobile expenses per delivery; and

i. They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

65. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## **CLASS ACTION ALLEGATIONS**

66. Plaintiff brings the Second, Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23(a) and (b), on behalf of himself and a class of persons consisting of:

> All persons who work or worked as Delivery Drivers for Defendants at their GC Pizza Hut stores in Maine from six years prior to the filing of this Complaint to the entry of judgment in the case" ("Rule 23 Class").

67. Excluded from this Rule 23 Class are Defendants; their legal representatives, affiliates, officers, directors, heirs, assigns, and successors, as well as any entity in which Defendants have a controlling interest. Also excluded from this Class are any federal, state, or local governmental entities; any judicial officer presiding over this action; the members of the judicial officer's immediate family and staff; and any juror assigned to this action.

68. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records.

For the purpose of notice and other purposes related to this action, Class members' names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

69.     The persons in the Rule 23 Class are so numerous that joinder of all members of the Rule 23 Class is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the precise number of class members has not been determined at this time, upon information and belief, Defendants have employed hundreds of individuals as pizza delivery drivers in Maine during the applicable statute of limitations. Plaintiffs and members of the Rule 23 Class have been equally affected by Defendant's violations of law. Rule 23 Class members are so numerous that joinder of all members is impracticable. And, upon information and belief, the number of Class members numbers in, at least, the hundreds.

70.     There are questions of law and fact common to the Class. Defendants' policies, practices, and patterns of conduct—willfully failing to pay minimum wage to delivery drivers and unlawfully failing to properly and adequately reimburse delivery drivers for expenses incurred in the course of employment—applied uniformly to all members of the Class who were similarly affected by these policies and conduct. And Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

71.     Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief that would be sought by each Rule 23 Class member in separate actions. Plaintiff and the Rule 23 Class members were subject to the same policies, practices, and patterns of conduct of Defendants, as alleged herein, of willfully failing to pay minimum wage and unlawfully failing to properly and adequately reimburse delivery

drivers for expenses incurred in the course of employment, and failing to pay Plaintiff in a timely manner.

72.     Plaintiff and the Rule 23 Class members sustained similar injuries and damages arising from the same unlawful practices, polices, and patterns of conduct.  Plaintiff and the Rule 23 Class members have all been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

73.     By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

74.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

75.     Plaintiff is represented by attorneys who are experienced and competent in class action litigation and employment litigation.

76.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3).

77.     This action is properly maintainable as a class action under Fed. R. Civ. P.23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant.

78.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

79.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because in the context of wage and hour litigation, individual minimum wage employees lack the financial resources to vigorously prosecute separate lawsuits against corporate defendants.  In addition, upon information and belief, current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies. There do not appear to be any difficulties in managing this class action

80.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a.  Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

    b.  Whether Defendants failed to reimburse automobile expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage;

    c.  Whether Defendants recorded and reimbursed the actual expenses of Plaintiff and the Rule 23 Class members;

    d.  Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate;

e.  Whether Defendants paid Plaintiff and the Rule 23 Class all wages due within the time frame contemplated by Maine law;

f.  Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

g.  The nature and extent of classwide injury and the measure of damages for those injuries.

81.  In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### COUNT 1
Failure to Pay Minimum Wages – Violation of Fair Labor Standards Act
(On Behalf of Plaintiff and the FLSA Collective)

82.  Plaintiff reasserts, restates, reallages, and incorporates the foregoing allegations as if fully rewritten herein.

83.  Plaintiff has consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b). As this case proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

84.  This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, for failure to pay a minimum wage to Plaintiffs and members of the FLSA Collective to which they were entitled.

85.  At all times relevant, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201, *et. seq.*

86.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

87.     The minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendant and protect Plaintiffs and the FLSA Collective.

88.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

89.     Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

90.     Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses, they did not compensate Plaintiff and the FLSA at $7.25, and violated the minimum wage law.

91.     Additionally, because the Defendants failed to adequately reimburse the Plaintiff and the FLSA collective for said expenses, Defendants did not pay an adequate tipped wage, and in fact Plaintiff and the FLSA collective were paid an effective wage lower than they were informed they would be paid.

92.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA, disregarded the rights of Plaintiff and the FLSA Collective, and refused and failed to pay a minimum wage to Plaintiffs and the FLSA Collective.

93.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

94. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, interest, and such other legal and equitable relief as the Court deems proper. Plaintiff, on behalf of himself and the FLSA Collective, also seeks recovery of attorneys' fees and costs to be paid by Defendants as provided by the FLSA.

COUNT 2
Failure to Pay Minimum Wages – Violation of Maine Revised Statutes, Title 26, Chapter 7, Subchapter 3 § 661, et seq.
(On Behalf of Plaintiff and the Rule 23 Class)

95. Plaintiff reasserts, restates, reallages, and incorporates the foregoing allegations as if fully rewritten herein.

96. Plaintiff and the Rule 23 Class were or are employees of Defendants as the term is defined in Maine Revised Statutes, Title 26, Chapter 7, Subchapter 3 § 663.

97. Defendants employed and/or employ Plaintiff and the Rule 23 Class within the meaning of Maine Revised Statutes, Title 26, Chapter 7.

98. Maine Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses without adequate reimbursement.

99. By failing to pay Plaintiff and the Rule 23 Class minimum wage for all hours worked, Defendants have violated inter alia Maine Revised Statutes, Title 26, Chapter 7 § 664.

100. As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class the wages they are due, Plaintiff and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest.

Count 3
Failure to Pay Sufficient Tipped Wages – violation of inter alia Maine Revised Statutes, Title 26, Chapter 7, Subchapter 3 § 661, et seq.

101.    Plaintiff reasserts, restates, reallages, and incorporates the foregoing allegations as if fully rewritten herein.

102.    Defendants failed to properly pay Plaintiff and the Rule 23 Class sufficient tipped wages for hours worked delivering pizza.  By requiring them to cover automobile expenses without adequate reimbursement and paying them only $7.75 per hour for delivery work, Plaintiff's combined wage did not meet the minimum wage.

103.    Plaintiff and the Rule 23 Class are employees as the term is defined in Maine Revised Statutes, Title 26, Chapter 7, Subchapter 3 § 663.

104.    By failing to pay Plaintiff and the Rule 23 Class sufficient tipped wages for hours worked delivering pizza, Defendants have violated inter alia Maine Revised Statutes, Title 26, Chapter 7, Subchapter 3 § 664.

105.    As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class the wages they are due, Plaintiff and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest.

<u>Count 4</u>
Failure to Pay Earned Wages – violation of inter alia Maine Revised Statutes, Title 26,
Chapter 7, Subchapter 2 § 621-a, et seq.
(On Behalf of Plaintiff and the Rule 23 Class)

106.    Plaintiff reasserts, restates, reallages, and incorporates the foregoing allegations as if fully rewritten herein.

107.    Maine Revised Statutes, Title 26, Chapter 7, Subchapter 2 § 621-a requires that Defendants pay Plaintiff and the Rule 23 Class wages due at least once every sixteen days.

108.    Maine Revised Statutes, Title 26, Chapter 7, Subchapter 2 § 621-a requires that payment shall be made for all wages earned to a date not more than eight business days prior to the date of payment.

109.    Because Defendants did not adequately reimburse the Plaintiff and the Rule 23 class, they failed to pay all wages due to them under the FLSA and Maine law, and Defendants have violated Maine law.

110.    Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than sixteen days after they were earned.

111.    In violating Maine law, Defendants acted willfully, without a good faith basis and with reckless disregard to Maine law.

112.    As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, liquidated damages, costs, and attorneys' fees.

<u>Count 5</u>
Withholding of Wages – violation of inter alia Maine Revised Statutes, Title 26, Chapter 7, Subchapter 2 § 629, et seq.
(On Behalf of Plaintiff and the Rule 23 Class)

113.    Plaintiff reasserts, restates, reallages, and incorporates the foregoing allegations as if fully rewritten herein.

114.    Maine Revised Statutes, Title 26, Chapter 7, Subchapter 2 § 629 inter alia limits the type and amount of deductions and assignments are permitted to take from an employee's wages.

115.    Defendants violated Maine Revised Statutes Title 26, Chapter 7, Subchapter 2 § 629 by taking deductions from the wages of Plaintiff and the Rule 23 Class members for automobile expenses without the prior consent of Plaintiff and the Rule 23 Class members.

116. By not paying Plaintiff and the Rule 23 Class for all hours worked, Defendants violated Maine Revised Statutes Title 26, Chapter 7 § 629.

117. Defendants did not act in good faith in failing to pay Plaintiff and the Rule 23 Class their earned wages.

118. As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class in accordance with Maine Revised Statutes, Title 26, Chapter 7 § 629, Plaintiff and Rule 23 Class are entitled to unpaid wages, unreimbursed expenses, an additional two times unpaid wages, damages, costs, and attorneys' fees.

Count 6
(Unjust Enrichment)
(On behalf of Plaintiff and Rule 23 Class)

119. Plaintiff reasserts, restates, realleges, and incorporates the foregoing allegations as if fully rewritten herein.

120. The Rule 23 Maine Unjust Enrichment Class members at the Defendants' GC Pizza Hut stores have conferred a benefit on Defendants by requiring the Plaintiffs to use their own cars and cellphones to perform work for Defendants.

121. Defendants have knowledge of and have accepted the benefit conferred on them by Rule 23 Maine Unjust Enrichment Class members.

122. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Maine Unjust Enrichment Class members without commensurate compensation.

123. Plaintiff and the Rule 23 Maine Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the six years preceding the filing of this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nathaniel Pritchette, on behalf of himself, the FLSA Collective, and the Maine Rule 23 Class, prays for the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Maine law.

F.      An award of unpaid minimum wages and unreimbursed expenses due under the FLSA and Maine law.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

DATED: February 25, 2022

Respectfully submitted,

RAIMOND & STAINES, LLC

By:    Frank V. Raimond (NY Bar # 4409959)
RAIMOND & STAINES, LLC
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 884-9636
frank@raimondstaines.com

Andrew P. Kimble (Ohio Bar # 0093172)
BILLER & KIMBLE, LLC
325 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 651-3700
Facsimile: (614) 340-4620
akimble@billerkimble.com

*Counsel for Plaintiff, the Proposed FLSA Collective and Proposed Class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.